```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**BETH A. WILLIAMS,**

    **Plaintiff,**

**v.**                                            **CIVIL ACTION NO. 1:05CV113**
                                                      (Judge Keeley)

**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION,**

    **Defendant.**

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B), Rule 72(b), Federal Rules of Civil Procedure and Local Court Rule 4.01(d), the Court referred this Social Security action to United States Magistrate James E. Seibert with directions to submit proposed findings of fact and a recommendation for disposition. On August 21, 2006, Magistrate Seibert filed his Report and Recommendation and directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within ten (10) days after being served with a copy of the Report and Recommendation. On August 31, 2006, plaintiff, Beth A. Williams, through counsel, Michael G. Miskowiec, filed objections to the Magistrate Judge's Report and Recommendation.

### I.   PROCEDURAL BACKGROUND

On December 11, 2001, Williams filed an application for Supplemental Security Income ("SSI"), alleging disability due to

chronic neck and back pain, chronic joint pain, carpal tunnel syndrome, hepatitis C, chronic obstructive pulmonary disease ("COPD") and depression. On January 28, 2003, an Administrative Law Judge ("ALJ") held a hearing at which Williams and a vocational expert ("VE") testified. On May 10, 2005, the ALJ determined that Williams was not disabled. Williams appealed the ALJ's ruling, and, on June 27, 2005, the Appeals Council denied her request for review. On August 3, 2005, Williams filed this action seeking review of the final decision.

## II. PLAINTIFF'S BACKGROUND

On the date of the hearing, January 28, 2005, Williams was forty-one (41) years old. She has a high school equivalent GED and no relevant prior work experience.

## III. ADMINISTRATIVE FINDINGS

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 416.920 (2003), the ALJ found:

1. Williams has not engaged in substantial gainful activity since the alleged onset of disability;

2. Williams' hepatitis C, osteoarthritis of the cervical and lumbar spine, COPD, carpal tunnel syndrome and osteoarthritis of the right shoulder are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b). These medical impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

3. Williams' allegations regarding her limitations are not totally credible;

4. Williams retains the residual functional capacity to perform the exertional demands of light work with no climbing ladders, ropes or scaffolds, no more than occasional work on stairs or ramps, no more than occasional balancing, stooping, kneeling, crouching or crawling, no work around significant workplace hazards like heights or dangerous moving machinery, no exposure to concentrated levels of heat or cold, no reaching or overhead work with the right arm or shoulder and must have the ability to miss one day of work per month;

5. Williams has no past relevant work.(20 C.F.R. § 416.965);

6. Williams is considered a "younger individual". (20 C.F.R. § 416.963);

7. Williams has a high school equivalent education;

8. Williams has the residual functional capacity to perform a significant range of light work. (20 C.F.R. § 416.967);

9. Although Williams' exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she can perform, including private mail clerk, general office clerk or packer. At a sedentary exertional level Williams could work as an interviewer or an order clerk; and

10. Williams was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 C.F.R. § 416.920(f)).

## IV. PLAINTIFF'S OBJECTIONS

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Williams objects to Magistrate Judge Siebert's Report and Recommendation and alleges that he erred in failing to address Williams' argument that, "even if the Administrative Law Judge properly found that the claimant's depression was not severe, the Judge was required to consider the limitations resulting from this non-severe impairment in determining Ms. Williams' residual functional capacity pursuant to **Social Security Ruling 96-8p**".

## V. MEDICAL EVIDENCE

The following medical history is relevant to the time period, April 15, 2003 through May 10, 2005:

1. A January 2004 psychiatric review technique from Michael E. Carter indicating no medically determinable impairment, no functional limitations and activity restrictions related mainly to pain;

2. A March 26, 2004 progress note from Jaclyn Gabriel, D.O., Family Practice Resident/Faculty indicating samples of and a prescription for Wellbutrin 100 mg;

3. An April 30, 2004 progress note from Dr. Gabriel Family Practice Resident/Faculty noting depression and providing samples of Wellbutrin 300 mg;

4. A May 25, 2004 letter from Dr. Gabriel indicating:

> This letter is written on behalf of my patient, Ms. Beth A. Williams, whom I have been following at United Hospital Center's

> Family Medicine Center. Ms. Williams has had a diagnostic workup for her arm pain and paresthesias which showed cervical disc disease, possibly related to radiculopathy, and also bilateral carpal tunnel syndrome in her arms. I do not believe that this patient can actively continue her current job, consisting of labor and lifting. This patient does need some type of financial aid to help her with healthcare costs.

5. A July 7, 2004 progress note from Dr. Gabriel indicating treatment for depression with Paxil 10 mg;

6. A September 1, 2004 progress note from Dr. Gabriel indicating treatment for depression with Paxil increased from 25 to 37.5 mg;

7. A December 8, 2004 progress note from Dr. Gabriel indicating treatment for depression with Paxil increased 37.5 to 50 mg; and

8. A February 2, 2005, progress note from Dr. Gabriel indicating Williams was "less depressed."

## VI. DISCUSSION

Williams contends that the ALJ failed to include any limitation resulting from her depression in his residual functional capacity evaluation, and, thus, failed to follow Social Security ruling 96-8p.

In <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990), the Fourth Circuit stated that the ALJ bears the ultimate

5

responsibility for weighing the evidence and resolving any conflicts, and that, in reviewing for substantial evidence, the reviewing court may not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Therefore, the Court will not reverse the ALJ's decision as long as there is substantial evidence in the record to support his decision.

   SSR 96-8p provides, in pertinent part:

   > The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

   20 C.F.R. 404.1545 Residual Functional Capacity provides:

   > (a) *General – (1) Residual functional capacity assessment*. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record. (See § 404.1546.).
   >
   > (2) *If you have more than one impairment*. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521 and 202.1523, when we assess your residual

functional capacity. (See paragraph (e) of this section.)

(3) *Evidence we use to assess your residual functional capacity*. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will sue to make a finding about your residual functional capacity. (See §404.1512(c). However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and §404.1529.)

(4) *What we will consider in assessing residual functional capacity*. When we assess your residual functional capacity, we will consider your ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section.

. . .

(c) *Mental abilities*. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited

>   ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.
>
> . . .
>
>   (e) *Total limiting effects*. When you have a severe impairment(s), but your symptoms, signs and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis. In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 404.1529(c).

Here, the ALJ found

>   that the claimant has no mental impairment that would significantly limit her mental ability to do basic work activities. The claimant, who was tearful at the hearing, testified to some depressive symptoms mostly related to her complaints of pain and Hepatitis C treatment, but has not followed through with her doctor's advice to seek specialized mental health treatment. She takes

8

Paxil that sometimes helps, which is prescribed by her primary care physician, Jaclyn Gabriel, D.O. She receives no therapy or other mental health treatment. The claimant reported in her current medication list that she only takes a tricyclic antidepressnat for sleep, which was also prescribed by Dr. Gabriel. (Exhibit 11E). In a letter dated May 25, 2004, Dr. Gabriel did not mention depression as an impairment, noting only physical impairments that limit her ability to work. (Exhibit 11F, p. 12) Dr. Gabriel's treatment records show few and relatively mild complaints of depression that appear to be well controlled by the prescribed anti-depressant Paxil, with the last treatment record dated February 2, 2005, reporting the claimant to be pleasant and less depressed. (Exhibits 11F; 14F; 21F).

Reviewing psychologists for the state agency in a psychiatric review technique form dated January 4, 2004, and affirmed on April 14, 2004 found that the claimant did not have a medically determinable mental impairment, despite her allegation of depression. (Exhibit 6F). The Administrative Law Judge give [sic] great weight to this assessment since it is fully supported by the medical evidence of record through to April 14, 2004. However, as noted above, Dr. Gabriel has diagnosed the claimant with depression and currently prescribes Paxil that provides good control of her relatively mild depressive symptoms. Therefore, the claimant's depression is a medically determinable mental impairment, but when assessed under the 'B' criteria of Listing 12.04, it would impose no more than mild functional limitations with no episodes of decompensation. Furthermore, the evidence does not establish the presence of the 'C' for Listing 12.04. Therefore, the Administrative Law Judge finds that the claimant has no severe mental impairment (standing alone), having no more than mild functional limitations under the 'B' criteria. 20 CFR

> § 416.92(a)(d)(1). Furthermore, the evidence supports a finding that the claimant retains the mental ability to perform basic work activities. 20 CFR § 416.921.

The Magistrate Judge noted that the ALJ reviewed the medical evidence of record and correctly determined that the record contained only occasional reports of depression, that Williams' treating physician, Dr. Gabriel, prescribed anti-depressant medication beginning with Wellbutrin and then changing to Paxil, and that the dosage for these medications was gradually increased throughout the period of use in 2004. The ALJ also indicated that the medical evidence revealed positive effects from this treatment which the February 2005 progress note of Dr. Gabriel confirmed. Thus, it is clear that the ALJ reviewed all of the evidence of record and determined that it did not substantially support a diagnosis of severe depression.

It is true that the ALJ is required to review all of the evidence of record prior to determining whether an individual is capable of performing work despite the substantially supported limitations. Here, the ALJ did not include any limitations based on depression in the RFC because he had already determined that there were "few to none" functional limitations from her mild depression. The ALJ noted that the notes from Williams' physician contained occasional notations regarding depression and further reflected that the treatment with Paxil was effective.

Moreover, even though the ALJ acknowledged that since the depression was a diagnosed illness it represented a valid medical impairment, he found that "when assessed under the 'B' criteria of Listing 12.04, it would impose no more than mild functional limitations with no episodes of decompensation."

The Magistrate Judge determined that the record contained substantial evidence to support the ALJ's RFC determination. Furthermore, as noted above, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), provides that the ALJ bears the ultimate responsibility for weighing the evidence and resolving any conflicts, and that, in reviewing for substantial evidence, the reviewing court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, and will not reverse the ALJ's decision as long as there is substantial evidence to support that decision. Therefore, after careful review of all of the evidence of record, the Court agrees with the Magistrate Judge's determination that the record contains substantial evidence to support the ALJ's determination.

## VII. CONCLUSION

After examining the plaintiff's objections, the Court concludes that Williams has not raised any issues that were not thoroughly considered by Magistrate Judge Seibert in his Report and

Recommendation. Moreover, after an independent <u>de novo</u> consideration of all matters now before it, the Court is of the opinion that the Report and Recommendation accurately reflects the law applicable to the facts and circumstances before it in this action. Therefore, it is

**ORDERED** that Magistrate Seibert's Report and Recommendation be accepted in whole and that this civil action be disposed of in accordance with the recommendation of the Magistrate Judge. Accordingly,

1. the defendant's motion for Summary Judgment (Docket No. 10) is **GRANTED**;
2. the plaintiff's motion for Summary Judgment (Docket No. 9) is **DENIED**; and
3. this civil action is **DISMISSED WITH PREJUDICE** and **RETIRED** from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment order. Fed.R.Civ.P. 58.

The Clerk of the Court is directed to transmit copies of this Order to counsel of record.

DATED: March 19, 2007.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
